IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


DAVID HUNLEY                                                    PLAINTIFF


        v.                          CIVIL NO. 06-5124


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                 DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

        Plaintiff David Hunley brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration (Commissioner)

denying his claims for period of disability and disability insurance benefits (DIB) and

supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the

Social Security Act (Act).

**Procedural Background:**

        The applications for DIB and SSI presently before this court were filed on September 29,

2003, alleging an inability to work since August 29, 2003, due to a seizure disorder, major

depression, bipolar disorder, alcohol dependence in remission and a personality disorder. (Tr.

47-50, 222-225). An administrative hearing was held on December 12, 2005. (Tr. 230-258).

Plaintiff was present and represented by counsel.

        By written decision dated February 22, 2006, the ALJ found that plaintiff has an

impairment or combination of impairments that are severe.  (Tr. 12-13).  However, after

reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet

or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform light work provided that he avoid moving machinery, heights, ladders, scaffolds, mechanical work, and unprotected machinery. (Tr. 14). Regarding plaintiff's mental limitations, the ALJ determined that plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (Tr. 14). The ALJ determined plaintiff maintained the ability to understand, remember and follow only simple instructions, make simple decisions and adapt and interact with others in a low demand routine work setting. With the help of vocational expert testimony, the ALJ determined plaintiff could perform other work as a fast food worker, a press operator, a hotel/motel maid and an assembly bench worker. (Tr. 17).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on May 17, 2006. (Tr. 3-5). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties filed appeal briefs and this case is before the undersigned for report and recommendation. (Doc. # 8,11).

AO72A
(Rev. 8/82)

**Evidence Presented:**

At the administrative hearing before the ALJ on December 12, 2005, plaintiff was thirty-eight years of age. Plaintiff testified he obtained his high school education. (Tr. 233). The record reflects plaintiff's past relevant work consisted of work as an automobile body repairer . (Tr. 16).

The pertinent medical evidence in this case reflects the following. Prior to plaintiff's alleged onset date of August 29, 2003, plaintiff entered the St. Mary Medical Center emergency room on August 12, 2003, with complaints of having had a seizure. (Tr. 133). Intake notes indicate plaintiff had missed recent doses of his seizure medication. (Tr. 133). Blood tests indicated his Dilantin level was 2.0. (Tr. 132, 134). Plaintiff reported he had consumed alcohol recently and blood tests supported this statement. (Tr. 129, 133). A CT scan of plaintiff's brain revealed cerebral atrophy but was otherwise normal. (Tr. 128). Plaintiff was diagnosed with a possible seizure and subtherapuetic Dilantin. (Tr. 123).

On October 7, 2003, Dr. George G. Flamm reported plaintiff was taking Dilantin, Zoloft, a B-1 vitamin and albuterol spray. (Tr. 159). Dr. Flamm indicated plaintiff had a seizure about a month prior to the visit. (Tr. 158). Treatment notes indicate plaintiff was drinking twelve beers a week. Plaintiff also reported difficulty with sleeping. Dr. Flamm recommended plaintiff stop using tobacco and beer. (Tr. 158).

On October 15, 2003, plaintiff sought treatment in the emergency room after experiencing a seizure and fall. (Tr. 144). Plaintiff reported he had fallen and hit his head and had felt nausous since having the episode. Treatment notes indicate that the head laceration required sutures. (Tr. 147). A non-contrast CT of the brain revealed no acute post-traumatic abnormality. (Tr. 150).

3

A form noted to be completed by Dr. Flamm on October 17, 2003, reports plaintiff has a history of recurrent epileptic seizures due to alcohol intoxication and plaintiff was diagnosed with a seizure disorder and alcoholism. (Tr. 153-154). Dr. Flamm noted plaintiff had been prescribed Dilantin and Zoloft and that plaintiff had been non-complaint with taking his medication. (Tr. 154).  Dr. Flamm indicated that he could not provide a medical opinion regarding plaintiff's ability to do work related activities but did note that plaintiff's alcohol abuse limited his ability to do work related activities.

There are treatment notes dated November 1, 2003, and December 2, 2003. (Tr. 15). While these notes are difficult to read, Dr. Flamm indicated plaintiff brought in SSI forms on November 1st, and that plaintiff had sutures removed on December 2nd.

In a letter dated December 4, 2003, Dr. Scott R. Sharetts reported he saw plaintiff for a neurological evaluation. (Tr. 160). Dr. Sharetts noted plaintiff has a history of depression and was taking Zoloft which caused some gastritis, and that plaintiff has a history of hepatitis C and cirrhosis presumably due to ongoing ethanol use.  Plaintiff reported that he consumed alcohol on a fairly regular basis. Plaintiff reported he last worked in June at an auto body repair shop but was let go after having a seizure. Dr. Sharetts noted plaintiff's most recent seizure occurred in mid-October. (Tr. 161). Upon examining plaintiff, Dr. Sharetts noted plaintiff was thin for his height; that his speech was clear; that his speech was functional; and that his hearing was normal. Plaintiff's central cranial nerves II through XII were intact. Dr. Sharetts noted little if any finger-to-nose dysmetra or ataxia of gait and mild tremulousness with the arms extended.  Plaintiff had no cogwheeling or myoclonus and his strength was reasonable both proximally and distally. Dr. Sharetts found plaintiff's reflexes were 1-2 and symmetrical without lower extremity clonus. Dr.

4

Sharetts noted no lateralized sensory deficit. Dr. Sharretts requested that plaintiff provide him copies of his medical records.  Dr. Sharetts said after reviewing the records he would decide if further testing was needed. However he stated that plaintiff first had to "get serious about an alcohol withdrawal program." Plaintiff was to remain on Dilantin and to stop all alcohol consumption.

Plaintiff entered an alcohol withdrawal program at Turning Point in December of 2003, and was discharged after completing the program on January 14, 2004. (Tr. 162-175).

On March 25, 2004, plaintiff sought treatment at Lourdes Medical Center after having a seizure at home. (Tr. 176-179). A CT scan revealed a right parietal contusion and subdural hematoma so plaintiff was admitted overnight for observation. (Tr. 178).  Dr. Elisabeth M. Post noted plaintiff's Dilantin level was 5.8 upon admission so he was loaded with Dilantin while admitted.  Upon admission plaintiff's alcohol level was 303 which indicated alcohol abuse. (Tr. 178). Dr. Post discharged plaintiff in the care of his girlfriend and instructed him to come to her office for a follow-up on Thursday after his CT scan and Dilantin level check.

On April 29, 2004, plaintiff underwent a consultative examination performed by Jo Anne Gonzalez, PhD. (Tr. 180-185).  Plaintiff reported he was engaged to be married, was living with his girlfriend and came to the appointment by bus. (Tr. 180).  Plaintiff reported he had to stop working because of his seizures. (Tr. 181).  Plaintiff reported he was admitted into Turning Point on December 13, 2003, and that upon discharge in January of 2004, he was referred to a psychiatrist for medication. Plaintiff reported he had been alcohol free since January of 2004. Plaintiff reported he was taking Zoloft and Dilantin. (Tr. 182).  Plaintiff reported feeling worthless and irritable. (Tr, 183).  He reported having a diminished ability to concentrate and had

5

thoughts of death and suicide but denied any attempts or intentionality. Plaintiff also reported feelings of anxiety and chest pain.

Upon examination, Dr. Gonzalez noted plaintiff's demeanor was cooperative and his social skills were superficially appropriate. Plaintiff's gait was normal, posture was slouched, motor behavior was restless and eye contact was poor. Plaintiff's expressive and receptive language were appropriate and thought processes were coherent and goal directed. There was no evidence of any hallucinations, delusions or paranoia. Plaintiff's affect was restricted and his mood was depressed. Recent and remote memory skills were mildly impaired. Attention and concentration were mildly intact. Dr. Gonzalez diagnosed plaintiff with bi-polar disorder and alcohol dependence in remission on Axis I, personality disorder not otherwise specified (NOS) with borderline and antisocial features on Axis II, and epilepsy on Axis III. (Tr. 184). Dr. Gonzalez recommended that plaintiff initiate individual psychiatric and psychological services on an regular basis. Dr. Gonzalez opined plaintiff's prognosis was poor due to his poor history of consistent treatment and that plaintiff was not able to manage his own funds.

On June 11, 2004, psychologist Dan Donahue reviewed the record and completed a Mental Residual Functional Capacity form. (Tr. 200-202). Dr. Donahue reported that plaintiff was moderately limited in his ability to remember, understand, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work

AO72A
(Rev. 8/82)

setting. (Tr. 200-201).

On June 22, 2004, Dr. Steve Owens, a non-examining, medical consultant, completed a RFC assessment stating that plaintiff, could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull limited in the upper extremities; that plaintiff should avoid concentrated exposure to hazards;  and that no postural, manipulative, visual or communicative limitations were evident. (Tr. 204-211).   After reviewing all the evidence, Dr. Ronald M. Crow affirmed Dr. Owens' findings on August 19, 2004.  (Tr. 211-212).

On October 28, 2004, plaintiff entered the Siloam Springs Memorial Hospital emergency room complaining of having experienced a seizure. (Tr. 216-221). Plaintiff denied loss of consciousness but reported feeling light headed. (Tr. 217). Treatment notes indicate plaintiff had not recently seen or been treated by a doctor. (Tr. 218).  Laborartory tests showed plaintiff tested positive for amphetamines, barbituates, methamphetamine and tetrahydrocannabinol. (Tr. 219). Plaintiff's Dilantin level was 3.4 while the reference range is between 10.0 and 20.0. (Tr. 220). Plaintiff was diagnosed with a possible seizure.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d

7

964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national

8

economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id.*  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible.  The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The medical evidence of record establishes plaintiff has been diagnosed with a seizure

disorder and is taking Dilantin. Plaintiff has sought treatment in the emergency room for seizure activity during the relevant time period however during those visits laboratory tests also showed plaintiff's Dilantin levels were low. There is no medical evidence showing that plaintiff experienced seizures when his Dilantin levels were at the proper level.

The medical records further indicate plaintiff had been drinking alcohol or reported that he continued to drink alcohol to treating and examining physicians.  The record clearly shows plaintiff was instructed to stop drinking and while he did seek treatment in rehabilitation in December of 2003 through the beginning of January of 2004, records indicate alcohol was in plaintiff system in March of 2004.

Plaintiff's counsel contends that the ALJ did not do a proper analysis of whether plaintiff's alcohol use was a contributing factor in plaintiff's disability. The ALJ is only required to make this determination if he found plaintiff to be disabled. 20 C.F.R. § 404.1535(a) (" If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability"). In the present case, plaintiff was not found to be disabled so the analysis to determine whether alcohol was a contributing factor material to plaintiff's disability was not necessary.  However, the record clearly indicates that despite recommendations by his treating physicians to abstain from using alcohol, plaintiff consumed alcohol until at least March of 2004. Failure to follow a prescribed course of treatment is pertinent to a disability claim and was properly addressed by the ALJ. *Brown v. Barnhart*, 390 F.3d 535, 540 -541 (8th Cir. 2004); *Scales v. Barnhart*, 363 F.3d 699, 705 (8th Cir. 2004).  Further, the record shows plaintiff tested positive for amphetamines, barbituates, methamphetamine and

10

tetrahydrocannabinol in October of 2004.

Plaintiff's counsel contends the ALJ erred in not discussing the CT scan dated August 12, 2003, indicating plaintiff had cerebral atrophy. We point out that CT scans performed in October of 2003 and March of 2004 did not reveal cerebral atrophy.

With regard to plaintiff's alleged depression, bipolar disorder and personality disorder the ALJ properly pointed out that while the rehabilitation center did recommend that plaintiff seek treatment once discharged there is no indication that plaintiff sought treatment for a mental impairment. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (disability finding is disfavored where claimant presents no evidence of ongoing counseling or psychiatric treatment, or change in mental capabilities). Further, plaintiff testified that he had taken Zoloft until it started to cause stomach problems and that he had not experienced any problems since his discontinuing its use. (Tr. 250-251). Plaintiff testified if it weren't for his seizure disorder he would be able to work. (Tr. 250).

Plaintiff's reports concerning his daily activities are also inconsistent with his claim of disability. The record also shows plaintiff is able to take care of his personal needs, perform some household tasks and work twenty to thirty hours a week doing light cleaning up work around his brother's construction sights. (Tr. 78, 95, 184, 235). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. *Cf. Gray v.* Apfel, 192 F.3d 799, 804 (8th Cir. 1999) (plaintiff's ability to care for himself, do household chores, drive a car short distances, and perform other miscellaneous activities was inconsistent with his subjective complaints); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)

11

(ALJ properly discounted claimant's subjective complaints on basis that claimant was able to care for child, drive car, and sometimes go to grocery store); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television and drive indicated her pain did not interfere with her ability to concentrate; claimant's visits with her children indicated she could engage in some social functioning).

With regard to plaintiff's alleged hepatitis C, with the exception of a notation that plaintiff reported a history of hepatitis C there is no indication plaintiff has been diagnosed or treated for this disease at any time during the relevant time period.

Therefore, although it is clear that plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th

Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform a significant range of light work with some nonexertional limitations, the ALJ considered plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluations of non-examining medical examiners.  Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's examining physicians placed no restrictions on his activities during the relevant time period that would preclude a significant range of light work. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on all of the evidence contained in the file, we find substantial evidence supporting the ALJ's RFC determination

Finally, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d

13

294, 296 (8th Cir. 1996).  Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude him from performing other work as a fast food worker, a press operator, a hotel/motel maid and an assembly bench worker. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th  day of June 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

14